26CA1137 Peo in Interest of Walker 08-13-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 26CA1137
City and County of Denver Probate Court No. 26MH521
Honorable Beth A. Tomerlin, Magistrate

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Rachel Noel Walker,

Respondent-Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 13, 2026

Miko Brown, City Attorney, Haley Swetska, Assistant City Attorney, Denver, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary E. Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Respondent, Rachel Noel Walker, appeals the order upholding her certification for short-term mental health treatment and authorizing the involuntary administration of medication.  We affirm.

## I.     Background

¶ 2     In late May 2026, Walker was admitted to the psychiatric unit at Denver Health Medical Center on a seventy-two-hour mental health hold.  Prior to her arrival, she hadn't slept for multiple days; had been drinking alcohol with strangers (which she wasn't known to do); was observed wandering naked in public; and had kicked her partner in the face, knocking out four of his teeth.  While in the emergency room, she was assaultive, agitated, manic, and displayed symptoms of psychosis.  Later, her attending psychiatrist, Dr. Dimitri Zouev, observed that Walker was also hyperverbal, having tangential thoughts, and emotionally labile.  Based on the totality of Walker's symptoms and behaviors, Dr. Zouev diagnosed her with bipolar I disorder and opined that she was currently in a manic episode with psychotic features.

¶ 3     Medical personnel at Denver Health filed a notice of certification for short-term mental health treatment, which the

district court ordered. Walker sought review of the short-term certification. Concurrently, the People filed a motion for the involuntary administration of medication.

¶ 4 On June 2, a magistrate held a hearing on the two issues. After hearing the testimony of both Walker and Dr. Zouev, the magistrate upheld the short-term certification and granted the People's motion for the involuntary administration of medication. The magistrate credited Dr. Zouev's testimony, and, to the extent that Walker's testimony conflicted with Dr. Zouev's, the court found that it wasn't credible.

¶ 5 Among other things, the magistrate found by clear and convincing evidence that Walker has a mental health disorder and, as a result thereof, is a danger to others and is gravely disabled. As to dangerousness, the magistrate noted Walker's agitated behavior while in the emergency room and her violent and assaultive behavior toward her partner. And as to grave disability, the magistrate observed that Walker was "found in a condition where she was not able to care for herself or her own basic needs to avoid the risk of serious physical harm," noting that she was disrobing in public. The magistrate also found that she was "incapable of

making informed decisions about or providing for her essential needs without significant supervision and assistance from others."

¶ 6    The magistrate then found that the People had clearly and convincingly established all four elements necessary for the involuntary administration of medication, as set forth in *People v. Medina*, 705 P.2d 961 (Colo. 1985).  Thus, the magistrate authorized the following medications: Risperdal, Invega, lithium, Zyprexa, Abilify, Haldol, Depakote, Klonopin, Ativan, Cogentin, Benadryl, and Inderal.

## II.    Discussion

¶ 7    Walker challenges the sufficiency of the evidence supporting the magistrate's order.  Specifically, she contends that the evidence was insufficient to support the magistrate's determinations that (1) she is gravely disabled and (2) the People established the first and fourth *Medina* elements.  We disagree.

### A.    Legal Principles and Standard of Review

¶ 8    To authorize short-term mental health treatment, a court must find, as pertinent to this appeal, that the patient has a mental health disorder and, as a result, is gravely disabled or a danger to herself or others.  §§ 27-65-109(1)(a), 27-65-108.3(1)(b), C.R.S.

3

2025 (effective May 21, 2026); *People in Interest of Ramsey*, 2023 COA 95, ¶ 25.

¶ 9     The court may authorize the involuntary administration of medication if the petitioning party establishes each of the following elements: (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to herself or others in the institution; (3) a less intrusive treatment alternative isn't available; and (4) the person's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing treatment. *Medina*, 705 P.2d at 973.

¶ 10     Both an order of short-term certification and an order authorizing the involuntary administration of medications must be supported by clear and convincing evidence. § 27-65-108.3(1)(b); *Ramsey*, ¶¶ 25, 39; *Medina*, 705 P.2d at 971. Clear and convincing evidence is "evidence that is highly probable and free from serious or substantial doubt." *Destination Maternity v. Burren*, 2020 CO 41, ¶ 10 (citation omitted).

¶ 11    When reviewing such orders, we determine whether the evidence, viewed as a whole and in the light most favorable to the petitioning party, is sufficient to support the court's determination. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  We defer to the court's factual findings if there is evidence supporting them, but we review the court's legal conclusions de novo.  *Ramsey*, ¶ 23.  Both the resolution of testimonial conflicts and the determination of witness credibility are solely within the province of the fact finder. *Id.*  Where the evidence supports the district court's findings and conclusions, we may not substitute our judgment for that of the district court.  *People in Interest of A.J.L.*, 243 P.3d 244, 255 (Colo. 2010).

## B.    Grave Disability

¶ 12    A person is gravely disabled when, as a result of a mental health disorder, they are incapable of making informed decisions about or providing for their essential needs without significant supervision and assistance from other people.  § 27-65-102(17), C.R.S. 2025 (effective May 21, 2026).  As a result of being incapable of making these informed decisions, a person who is gravely disabled is at risk of substantial bodily harm, dangerous worsening

of any concomitant serious physical illness, significant psychiatric deterioration, or mismanagement of the person's essential needs that could result in substantial bodily harm. *Id.*

¶ 13 Among other things, Walker notes that Dr. Zouev testified that Walker is capable of making decisions regarding her essential needs, other than decisions concerning her mental health. This testimony, she posits, substantially undercuts a conclusion that she is unable to provide for her basic needs because of her mental illness. Rather, in Walker's view, the evidence focused almost entirely on her disagreement with psychiatric treatment and her refusal to take medication. While those circumstances may support a diagnosis of mental illness, she asserts, they don't establish a grave disability.

¶ 14 True, Dr. Zouev testified that Walker is "for the most part" able to make decisions about her essential needs without assistance. But Dr. Zouev also testified that Walker's inability to make certain decisions regarding her essential needs puts her at risk of substantial bodily harm such that she is gravely disabled. In particular, he noted that Walker's behaviors — including disrobing in public because of her mental health disorder — indicate an

inability to attend to basic needs, including "maintaining regulation within the confines of [the] law."

¶ 15    The magistrate credited this testimony, while rejecting Walker's testimony as not credible to the extent it contradicted Dr. Zouev. We aren't free to disturb such credibility determinations. *See Ramsey*, ¶ 23. Likewise, we agree with the court's legal conclusion that Walker's behavior of disrobing in public indicates that she is incapable of making informed decisions about her essential needs, placing her at risk of substantial bodily harm. Thus, notwithstanding Walker's assertions to the contrary, we aren't persuaded that the magistrate's grave disability determination rests on insufficient evidence.

¶ 16    In any event, the magistrate also determined that, because of her mental health disorder, Walker is a danger to others. The evidence supports this determination. The magistrate credited evidence that Walker had kicked her partner in the face, knocking out his front teeth. The magistrate also credited testimony that Walker was assaultive while in the emergency room. Thus, even assuming (solely for the sake of argument) a deficiency in the evidence supporting the magistrate's grave disability finding, the

7

record supports its finding of dangerousness, which Walker doesn't challenge. *See* §§ 27-65-108.3(1)(b) (requiring a showing of either grave disability "or" dangerousness); *see also Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) ("Generally, we presume the disjunctive use of the word 'or' marks distinctive categories.").

## C. The First *Medina* Element

¶ 17 The first *Medina* element requires the petitioner to demonstrate "the patient's incompetency to make treatment decisions." *Medina*, 705 P.2d at 973. A court is prohibited from ordering the forced medication of an involuntarily committed patient unless the court is satisfied that the patient's mental illness has so impaired her judgment as to render her incapable of participating in decisions affecting her health. *Id.*

¶ 18 Walker asserts that the People failed to prove the first *Medina* element by clear and convincing evidence because the evidence demonstrated that she was able to communicate a clear and consistent treatment preference and that she merely disagreed with her treating psychiatrist regarding the necessity of psychiatric treatment. We disagree.

¶ 19    The first *Medina* element doesn't simply ask whether a patient has the ability to "articulate his or her preferences" regarding treatment. *People in Interest of Strodtman*, 293 P.3d 123, 132 (Colo. App. 2011) (although the patient was able to articulate her preferences and concerns about medication side effects, the division affirmed the magistrate's finding that the patient was incompetent to effectively participate in the treatment decision because she didn't believe she had schizophrenia and hadn't embraced her need for treatment of the condition).  It requires a finding of incompetence to *effectively* participate in treatment decisions.  *Id.* Here, the court so found with record support.  In particular, the magistrate credited Dr. Zouev's testimony that Walker is incompetent to effectively participate in treatment decisions because she doesn't believe she's in a mental health crisis and therefore can't have a meaningful discussion with the doctor about the risks and benefits of treatment.  Dr. Zouev further testified that Walker had no insight into her mental illness, why she was hospitalized, or why she needed to be hospitalized.  And to the extent Walker offered contrary testimony, the magistrate rejected it as not credible.

9

¶ 20    Under these circumstances, we perceive no deficiency with the evidence supporting the magistrate's finding that Walker is incompetent to effectively participate in the relevant treatment decisions.

### D.    The Fourth *Medina* Element

¶ 21    The fourth *Medina* element requires a court to determine whether the patient's refusal of treatment "is bona fide and legitimate." *Medina*, 705 P.2d at 974.  If so, the court must determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 22    Walker notes that she voiced specific objections to the effectiveness of the medications and to side effects she had experienced while taking Risperdal.  She asserts that these concerns "constituted bona fide and legitimate reasons for declining the proposed medications and required meaningful consideration under *Medina*."  She faults Dr. Zouev for simply "dismiss[ing] her objections [to the requested medications] as illegitimate without

addressing her prior experiences or explaining why her concerns did not warrant greater weight" than the state's interests. And she asserts that the magistrate failed to "meaningfully evaluate [her] individualized objections" to the medications.

¶ 23　It is unclear to us what error Walker asserts, though, because the magistrate found that Walker's specific side-effect-based objections to the requested medications *were* bona fide and legitimate. But the magistrate relied on Dr. Zouev's "credible expert testimony" to find that Walker's "need for treatment [wa]s sufficiently compelling to override all of her specific objections, as well as to override any bona fide and legitimate interest she has in refusing treatment." We will not disturb the magistrate's determination.

¶ 24　Walker also claims that the magistrate's order authorized multiple alternative medications based, at least in part, on the possibility of future treatment decisions rather than each medication being *currently* necessary. In her view, this "weighs against the conclusion that the People established a sufficiently compelling need to override [her] right to refuse treatment under the fourth *Medina* factor." But the opening brief makes no reference to

11

case law addressing the propriety of so-called backup medications. *See, e.g.*, *People in Interest of R.C.*, 2019 COA 99M, ¶ 14 (analyzing the third *Medina* element and concluding that the possibility that a medication may no longer be an effective treatment "at some unspecified time in the future" was insufficient to authorize the administration of additional medications); *R.K.L.*, ¶ 44 (analyzing the fourth *Medina* element and concluding that "mere speculation" that a patient might need additional medications in the future was insufficient to authorize them where the patient was being effectively treated with the current medication). Nevertheless, Walker seems to assert such an argument.

¶ 25    At the time of the June 2 hearing, Dr. Zouev had been treating Walker for roughly twenty-four hours. He testified that he was treating Walker with Risperdal, lithium, Zyprexa, and Ativan. He testified that he was requesting Invega as an alternative to Risperdal "because of insurance." That is, he sought authorization for both Risperdal and Invega because sometimes insurance would only approve one or the other. He testified that he sought Abilify and Haldol as alternative antipsychotics in case Walker didn't respond to Risperdal. And he sought authorization for Depakote

and Klonapin in case lithium and Ativan respectively failed.  The doctor requested the remaining medications — Cogentin, Benadryl, and Inderal — to treat side effects on an as-needed basis.

¶ 26     Other than suggesting that their need was speculative, Walker makes no specific argument about why Dr. Zouev's treatment requests were inappropriate.  Dr. Zouev testified that Walker had only been in his care since the day before the hearing.  Although he believed that she had prior mental health admissions, he hadn't received any records of her medical history other than those provided by the emergency room, and Walker didn't want him to contact her husband.

¶ 27     Under these circumstances, we conclude that this case is analogous to *People in Interest of Ferguson*, 2025 COA 82, in which the treating physician (1) lacked sufficient knowledge of the patient's medical history to know which medication would best address the circumstances requiring involuntary medication; (2) developed a reasonable plan for the sequence in which he would try a reasonable number of alternatives; and (3) identified a need for flexibility in treatment options without having to return to court each time he sought to try a new medication.  *Id.* at ¶¶ 31-32.

¶ 28    The magistrate found, with record support, that Dr. Zouev

> cannot predict which of these medications . . .
> will work for Ms. Walker, which is why the
> Court is finding that the doctor needs
> flexibility and the alternative medications to
> prevent any delay in Ms. Walker's treatment,
> as any delay in her treatment could cause her
> to decompensate if the Doctor does not have
> the alternative medications to quickly switch
> to.

¶ 29    Thus, to the extent that Walker objects to the administration of backup medications, we conclude that the magistrate didn't err by including all of the requested medication options in its order.

### III.    Disposition

¶ 30    We affirm the order.

JUDGE PAWAR and JUDGE SULLIVAN concur.